UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD WALKER<br>　　　　Plaintiff, | : CIVIL ACTION NO. 3:01CV1331 (AVC)<br>:<br>: |
| v. | :<br>: |
| PROVIDENT COMPANIES, INC.,<br>UNUMPROVIDENT CORPORATION and<br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY<br>　　　　Defendants. | :<br>:<br>:<br>:<br>: SEPTEMBER 12, 2005 |

**DEFENDANTS MOTION *IN LIMINE* TO
SUPPLEMENT THE ADMINISTRATIVE RECORD AT TRIAL**

I.　**INTRODUCTION**

Defendants Provident Companies, Inc., the UnumProvident Corporation and the Provident Life and Accident Insurance Company (hereinafter, collectively "Provident") file this motion seeking permission to supplement the administrative record at the trial being held in this case with live testimony of Provident employees: Erin White, who made the claim determination regarding plaintiff's application for benefits; Nancy Beecher, M.D., Provident's medical consultant who had reviewed the medical information in the file one of the plaintiff's medical providers, Dr. Carl Boland and Tom McLaren, PhD, Provident's clinical neurpyschologist. Provident also seeks to supplement the administrative with certain medical records.

Provident, as claims administrator, maintained an administrative record which will be furnished to the Court as an exhibit in this matter. Provident seeks to supplement the administrative record with these individuals' testimony in order to provide the court with a fuller

review of review of the administrative decision-making process provided by Provident with regard to plaintiff's claim for benefits. Provident also seeks to supplement the administrative record with medical reports and records not available to it at the time the claims decision was made due to plaintiff's doctor's refusal to submit same to Provident.

## II.   BACKGROUND

Plaintiff was President and 50% owner of East River Oil Company. He was covered by a disability insurance policy issued by Provident. Plaintiff's employer provided this long-term disability insurance to eligible employees under a Plan subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. (hereafter "ERISA"). Plaintiff was covered by an "own occupation" policy under which he receives benefits if he cannot work at his own occupation. The conditions for receipt of benefits requires plaintiff to be totally disabled which is defined under the policy as when due to injury or sickness, he cannot perform all the substantial and material duties of his occupation.

Plaintiff has alleged that he was diagnosed with Lyme disease and as a result of the symptoms associated with that disease, could not perform the complex mental tasks associated with his position. Plaintiff claimed to experience dizziness, fatigue, poor concentration and memory disturbance. As a result of these symptoms, he alleged he became totally disabled in December 1999. On July 2, 2000, he submitted a claim for disability benefits under the Plan to Provident.

Plaintiff submitted medical records from his treating physician, Dr. Jeffrey Kopp, as proof of his disability. These records indicated that plaintiff had complained of lightheadedness and other symptoms since at least January 1996. By November 1999, the situation had evolved

2

to the point that plaintiff visited Dr. Kopp's office twice in November 1999 to complain about the "buzz" in head which lasted for seconds. After this conversation, Dr. Kopp arranged for a variety of tests including a carotid ultrasound, a Holter monitor cardiac stress test and CT scan of the head. All tests reported "normal" results.

The records indicate that in December 1999, Dr. Kopp referred Plaintiff to a neurologist Dr. Carl Boland, who stated that Plaintiff's mental status showed normal speech, language and cognition during the course of the interview and exam and that his memory seemed to be good for recent events. In January 2001, plaintiff tested positive for Lyme disease. As a result of this test, Dr. Kopp treated plaintiff with antibiotics and plaintiff's condition began to improve. By June 2000, he was " ...still not 100% ... but better." The records indicate that no restrictions or limitations had been placed upon plaintiff or that plaintiff had been advised by his treating physician to stop work or to work at a reduced level.

Provident had these records reviewed by a Board Certified physician, Dr. Nancy Beecher, who held that the objective data failed to substantiate the symptoms claimed by Plaintiff. After a review of the medical records, Dr. Beecher disagreed with Dr. Kopp that Walker's headaches, fatigue and dizziness were: (a) caused by Lyme disease and (2) so severe as to be disabling. Dr. Beecher concluded her opinion by stating that she could see no medical condition of sufficient severity to keep Walker from working at an administrative job

Pursuant to its discretion to determine eligibility for coverage, Provident reviewed Plaintiff's documentation and determined that Plaintiff was not entitled to benefits pursuant to the terms and conditions of the policy at issue. Although denying the claim, Provident invited Plaintiff to submit documentation as to his alleged cognitive impairments. On or about October

13, 2000, Provident wrote Dr. Kopp and asked him to provide "supporting documentation for the claimed cognitive impairments such as neuropsychological testing". Dr. Kopp did not do so.

Plaintiff obtained counsel to help him with the appeal of Provident's denial of benefits. Walker (through his attorney) appealed the denial of benefits decision to Provident. Provident reviewed the submitted materials and on January 9, 2001, Provident's appeal consultant wrote plaintiff's attorney a letter denying the appeal and stating that "[w]hile Dr. Kopp is of the opinion that the disease impairs Mr. Walker's cognitive function, at this point there is absolutely no testing data to support this suspicion." Provident informed plaintiff's attorney that if he had any other, yet unsubmitted, documents to submit to support his claims, that "the company remains willing to review that data."

In March 2001, plaintiff submitted a report from a clinical psychologist, Dr. Mark Kirschner. Dr. Kirschner provided a written report which stated that Lyme disease impaired Plaintiff's cognitive function to the point that he was disabled. However, Dr. Kirschner's opinion was at odds with Dr. Boland's report which had not found a disabling cognitive function.

To clarify some of these inconsistent findings and to fully evaluate Dr. Kirschner's report, Provident asked Plaintiff (on several occasions) to submit to it the "raw data" and "test scores" used by Dr. Kirschner in his evaluation. *See, e.g.* White Letter (May 23, 2001) attached hereto as **Exhibit A**. Provident made this request so that it could confirm Dr. Kirschner's results and findings. Dr. Kirschner refused to submit the raw data to Provident's clinical neuropsychologist. Without the test results and "raw data" to review, Provident could not confirm Dr. Kirschner's findings and thus could not overturn its determination that Plaintiff was not disabled pursuant to the terms and conditions of the Policy.

### III. LEGAL STANDARD

The parties agree that the *de novo* standard of review applies in the case at bar. A *de novo* review, as with the arbitrary and capricious standard, is generally based upon the administrative record. See *Hotaling v. Teachers Insurance and Annuity Association of America*, 62 F. Supp. 2d 731, 737 (N.D.N.Y. 1999); *Moore v. INA Life Insurance Company of New York*, 66 F. Supp. 2d 378, 384 (E.D.N.Y. 1999). Judicial review of a plan administrator's determination under either standard is confined to the administrative record unless, as discussed below, "good cause" justifies expanding the record. *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 134-35 (2d Cir. 2001); see also *Kaus-Rogers v. Unum Life Ins. Co. of America*, 2004 U.S. Dist. LEXIS 9797 at * 14 (W.D.N.Y. Apr. 4, 2004) (on *de novo* review excluding additional evidence relating to the plaintiff's job responsibilities and medical condition).

Under the *de novo* standard of review, the court does not give deference to the administrator's decision, but instead reviews the evidence to determine if the claimant was entitled to benefits under the terms of the policy. *Juliano v. The Health Maintenance Organization of New Jersey*, 221 F.3d 279(2d. Cir. 2000). The question before the court on a *de novo* review is whether the plaintiff has "carried his burden" to show that he is entitled to benefits under the terms of the policy. *Id.*; see also *Kearney v. Standard Insurance Co.*, 175 F. 3d 1084, 1090 (9th Cir.). The burden of establishing disability, as that phrase is defined by the Plan, rests with the claimant. See *Barnable v. First Fortis Life Ins. Co.*, 44 F. Supp. 2d 196, 204 (E.D.N.Y. 1999).

5

## IV.    LEGAL ARGUMENT

Defendants' position is that, under the circumstances of this case, it is not impermissible for the court to consider <u>limited</u> relevant and contemporaneous evidence as factors outside of the administrative record <u>if</u> the evidence can assist the court in determining how the fiduciary reached its decision. Provident notes that with regard to evidence outside of the administrative record it is <u>not</u> suggesting that a party can submit <u>new</u> (e.g. non-contemporaneous evidence or evidence that was not proffered to the claims fiduciary) but rather, under certain circumstances and when necessary, can submit limited explanatory evidence in order to provide a fuller review of the decision making process with regard to claim determination.

In reviewing a fiduciary's decision, a district court "must consider 'whether the decision was based on a consideration of the relevant factors.'" *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir) (1995) (quoting *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995)). In finding that the trustee's decision in that case denying benefits based on "limited information" was arbitrary and capricious, the court in *Miller* relied upon deposition testimony of the fund's administrator.

Thus, in *Miller*, the court approved, and relied upon, testimony outside of the administrative record to assist the court in evaluating (i) the exact nature of the information considered by the fiduciary in making its decision, (ii) whether the fiduciary was competent to evaluate the information in the administrative record, (iii) how the fiduciary reached its decision, and (iv) whether, given the nature of the information in the record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a "fair and full review" of the claim. <u>Id</u>. <u>See</u> <u>also</u> *Pulvers v. First Unum Life Insurance Company*, 210 F.3d 89 (2d Cir. 2000) (referring to

6

deposition testimony of "senior risk specialist" regarding administrator's unusual application of plan provision).

Provident believes that the testimonies of Dr. Beecher, along with the testimony of Mrs. White, can be considered *explanatory* evidence that will assist the court in providing a fuller review of the claim. For example, the testimony of Mrs. White will be useful in explaining why she needed the raw data and test summaries from Dr. Krischner something that is not clear in the administrative record.[1]

A district court judge may expand its review of an administrative decision beyond the record in front of the claims administrator upon finding "good cause" warranting the introduction of additional evidence. *Zervos v. Verizon, N.Y., Inc.*, 277 F.3d 635, 646 (2d Cir. 2002). *See also Muller v. First Unum Ins. Co.*, 341 F.3d 119, (2d Cir. 2003); *Critchlow v. First Unum Life Ins. Co. of Am.*, 340 F.3d 130, 133 n.2 (2d Cir. 2003) (agreeing). Accordingly, Provident believes that "good cause" exists to supplement the administrative record with the testimony of White and Beecher.

With regard to Dr. McLaren, Provident asserts that his testimony is necessary to inform the court why the "raw" testing data requested by Erin White from Dr. Kirschner (see **Exhibit A**) was necessary in this case. Provident notes that Dr. Kirschner continually refused to submit the raw data and test scores to Provident. Well after litigation commenced, and then only pursuant to subpoena, the data was obtained. In preparation for litigation, it was submitted to Dr. Tom McLaren, a medical consultant for Provident who specializes in the area of clinical neuropsychology.

---

[1] Provident also seeks the limited testimony of Dr. Carl Boland, one of plaintiff's medical providers.

7

The "raw" data was not obtained during the claims review process, <u>not</u> because Provident was negligent in its attempt to secure it but because Dr. Kirschner outright refused to send it to Dr. McLaren. If the Court permits Dr. Kirschner to testify, then it should only do so if the "raw" testing data, although not part of the administrative record, is allowed to become exhibits in the case. Following that logic, if Dr. Kirschner is allowed to testify about the results of his examination (utilizing the raw data) then Provident should be allowed to have Dr. McLaren testify, in addition to why the "raw data" was needed by Provident, his evaluation of Dr. Kirschner's examination of plaintiff. As to the neuropsychological considerations, Dr. McLaren has already opined, in part:

> "With all due respect to Dr. Kirschner, I have some concerns regarding his interpretation of some of the test data findings. He stated that the claimant's verbal memory was within the "slightly below average range". However, review of the raw testing data and comparison to the test manual norms indicate these tests (Logical Memory I/II of WMS-R) to be within the high average range (86th and 85th percentile respectively). Similarly, his report of the claimant's visual memory (Visual reproduction I/II of WMS-R) was reported as "below average" yet normative data indicate average levels (50th and 61st percentile respectively)."

In sum, Dr. McLaren's testimony will not only provide the court a fuller review of why such raw data is necessary but how his evaluation of Dr. Krischner's testing results indicate a different result[2]. This information is not part of the administrative record solely because Dr. Kirschner had refused all attempts by both Provident and plaintiff's counsel to secure the information. Once

---

[2] When he finally obtained the "raw" data, approximately two years after it had been requested from Dr. Kirschner and only after litigation had commenced, Dr. McLaren also found that Dr. Kirschner underscored the IQ vocabulary subtest which was 52 instead of 50 and that he had incorrectly added the Verbal and Performance IQ sections of the intelligence scale (WAIS-R) by 10 points.

8

again, Dr. McLaren's testimony in this area would only be necessary if the court allowed Dr. Kirschner to testify as to his findings.

With regard to Exhibits outside of the administrative record, Provident believes the following exhibits should be allowed[3]:

| Defendants' Preliminary Exhibit Number | Description of Exhibit |
|---|---|
| 52 | MRI – Brain (10/18/00) |
| 53 | Medical Report Dr. Boland (11/21/00) |
| 54 | Initial Evaluation Form (Dr. Kirschner) 01/02/01 |
| 55 | Results – WAIS-R (Kirschner Exam.) (1/26/01) |
| 56 | Results – Trail-Making (Kirschner Exam) (1/26/01) |
| 57 | Results – California Verbal Learning Test (Kirschner Exam) (1/26/01) |
| 58 | Results – Visual Hooper (Kirschner Exam) (1/26/01) |
| 59 | Results of Trailmaking (1/26/01) (Kirschner Exam) |

---

[3] Defendants would also ask the court to allow the use of deposition testimony for impeachment purposes.

9

| | |
|---|---|
| 60 | Results of Wechsler Memory Scale (Kirschner Exam) (1/26/01) |
| 61 | Results of Wisconsin Card Sort Test (Kirschner Exam) (1/26/01) |
| 62 | Results of MMPI-2 (Kirschner Exam) (1/26/01) |

Provident asks this court to include these documents although they are not included in the administrative record because they were not included in the administrative solely due to plaintiff's medical providers refusal to produce these records even upon Provident's request.

## V.   CONCLUSION

Accordingly, Provident believes that "good cause" exists to supplement the administrative record with the testimony of Beecher, White and McLaren and the documentary evidence noted above. Accordingly, it requests that the court allow this testimony and these exhibits to be admitted as a supplement to the administrative record.

DEFENDANTS,
PROVIDENT COMPANIES, INC.,
UNUMPROVIDENT CORPORATION and
PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY

By *Helen M. Kemp*
Helen M. Kemp (ct 14790)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT  06103-3597
Tel. No.: (860) 275-8200
Fax No.  (860) 275-8299
E-mail: hkemp@rc.com

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this 12th day of September, 2005, to:

>Paul H.D. Stoughton, Esq.
>Conway & Stoughton, LLP
>201 Ann Street
>Hartford, CT  06103

And a courtesy copy to:

>Hon. Alfred V. Covello
>U.S. District Court
>450 Main Street
>Hartford, CT  06103

*Helen M. Kemp*
Helen M. Kemp

## UNUM.

*Protecting everything you work for*

May 23, 2001

Paul H.D. Stoughton
241 Main Street
Hartford, CT 06106

Re: Mr. Edward Walker
claim #'s 52-06030581 & 52-06000878

Dear Mr. Stoughton:

Thank you for your letter dated May 14, 2001 and the accompanying neuropsychological report provided by Dr. Kirschner.

However, in order to evaluate the additional medical information submitted, our medical consultant has specifically requested the raw data for further confirmation of the results and findings. Dr. Kirschner's concerns of confidentiality are understood. Therefore, we assure confidentiality by requesting that the provider of the neuropsychological testing send the material directly to one of our neuropsychologist. We assure you that such data will be maintained in accordance with ethical and legal standards for psychological material.

The information needed includes all *raw data, scoring sheets, data summaries, test responses, computerized interpretive summaries and any other clinical documents produces during the neuropsychological testing*.

In order for us to complete a review of Mr. Walker's disability claim, we will need to have copies of the clinical material, as soon as possible. Please provide an invoice for any copying charges incurred. Again, we assure you that such data will be maintained in accordance with ethical and legal standards for psychological material.

Please ask Dr. Kirschner to forward those documents directly to the consultant listed below:

    Tom McLaren, PhD.
    Clinical Neuropsychologist
    Licensure : TN # P1864 & GA # 1954
    Phone: 800-451-8464

PLACL 00223

May 23, 2001
Page 2

Address:     UnumProvident Insurance Co.
             1 Fountain Square
             4 North - Confidential
             Chattanooga, TN 37402

Upon receipt of the additional information, we will have it promptly reviewed by our Medical Consultant. I will notify you of the results of the review as soon as it is completed. Thank you for your continued cooperation. Should you or Dr. Kirschner have any questions regarding this matter, please feel free to contact me at 1-800-451-8464, ext. 5776.

Sincerely,


Erin White ALHC
Lead Customer Care Specialist
Customer Care Center
Provident Life and Accident Insurance Company

Cc: Mr. Edward Walker

PLACL00222