**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| EDWARD WALKER<br>Plaintiff,<br><br>v.<br><br>PROVIDENT COMPANIES, INC.,<br>UNUMPROVIDENT CORPORATION and<br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. 3:01CV1331 (AVC)<br><br><br><br><br><br><br><br><br>SEPTEMBER 26, 2005 |

**DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION *IN LIMINE* TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

The defendants Provident Companies, Inc., the UnumProvident Corporation and the Provident Life and Accident Insurance Company (hereinafter, collectively "Provident") hereby files this objection to Plaintiff's Motion in Limine to supplement the administrative record.

Plaintiff has filed a motion seeking permission to supplement the administrative record at the trial with "paper" evidence of an alleged pattern of unreasonable claims handling procedures allegedly exhibited by Provident. He apparently plans on doing this by submitting the terms of a Regulatory *Settlement* Agreement to which Provident is a party (the same agreement offered to plaintiff) and perhaps by submitting case law from other jurisdictions as well as a possible transcript from a TV program – 60 minutes. Provident objects to these submissions as not only being outside of the administrative record but not relevant to the issues and to the case at bar.

## I. BACKGROUND

It is important to know what this case is about. Plaintiff claims that he suffered dizziness and fatigue to such an extent that he experienced cognitive difficulties in terms of poor

concentration and memory problems. He claims that these difficulties in turn, prevented him from performing all the material and substantial duties of his occupation.

After initial benefit denied on or about October 13, 2000, Erin White, Provident's Senior Customer Care Specialist specifically wrote plaintiff's physician, Dr. Jeffrey Kopp[1], and asked him to provide "supporting documentation for the claimed cognitive impairments such as neuropsychological testing". Dr. Kopp did not do so. (See **Exhibit A** attached hereto).

Plaintiff engaged an attorney, Paul Stoughton, and appealed the decision *without* submitting any additional medical records. On January 9, 2001, Provident's appeal consultant wrote plaintiff's attorney a letter denying the appeal and stating that "[w]hile Dr. Kopp is of the opinion that the disease impairs Mr. Walker's cognitive function, at this point there is absolutely no testing data to support this suspicion." Provident informed plaintiff's attorney that if he had any other, yet unsubmitted, documents to submit to support his claims, that "the company remains willing to review that data." (See **Exhibit A** attached hereto).

In March 2001, plaintiff submitted a report from a clinical psychologist, Dr. Mark Kirschner. Dr. Kirschner provided a written report which stated that Lyme disease impaired Plaintiff's cognitive function to the point that he was disabled. Erin White asked Plaintiff (on several occasions) to submit to it the "raw data" and "test scores" used by Dr. Kirschner in his evaluation. (See **Exhibit A** attached hereto).

Provident was informed by plaintiff's attorney that Dr. Kirschner refused to send the raw data and scores due to confidentiality concerns. The last letter sent by Provident (Erin White) seeking Dr. Kirschner's "raw data" was dated May 23, 2001 and addressed Kirschner's concerns.

---

[1] Dr. Kopp was plaintiff's family physician; he was not a neurologist or neuropsychologist.

(See **Exhibit A** attached hereto). Plaintiff 's response, instead of working to obtain and send the "raw data", was to file suit against Provident in Connecticut Superior Court on or about June 13, 2001 – three weeks from receipt of Provident's letter informing plaintiff how Dr. Kirschner's confidentiality concerns could be addressed.

From this scenario, Plaintiff asserts that certain evidence should be submitted obstentsibly to show Provident's allegedly "unreasonable" claims handling process.

## II. PLAINTIFF DOES NOT HAVE "GOOD CAUSE" TO INTRODUCE THIS EVIDENCE.

The Second Circuit has held that "the decision whether to admit additional evidence [beyond that in the administrative record] is one which is discretionary with the district court. … *DeFelice v. American Int'l Life Assurance Co. of New York*, 112 F.3d 61, 66 (2d Cir. 1997). The court has added, however, that "even where the district court exercises *de novo* review of the plan administrator's determination, the district court 'ought not' to accept additional evidence absent 'good cause.'" *Zervos v. Verizon New York, Inc.*, 277 F.3d 635, 646 (2d Cir. 2002) (quoting *DeFelice*, 112 F.3d at 66); *see also, Krizek v. Cigna Group Insurance*, 345 F.3d 91, 98 (2d Cir. 2003); *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 134-35 (2d Cir. 2001).

A "conflict of interest" may allow a party to submit to the court, evidence outside of the administrative record. However, Provident maintains that in the Second Circuit, the mere fact that Provident it served as both plan administrator and plan insurer is alone insufficient to trigger the inclusion of evidence outside of the administrative record. *See, e.g., Pulvers v. First UNUM Life Ins. Co.,* 210 F.3d 89, 92 (2d Cir. 2000) (the fact that UNUM served as both plan administrator and plan insurer is alone insufficient as a matter of law to trigger stricter review); *see also, Larsen v. Prudential Ins. Co.,* 151 F. Supp. 2d 167, 172 (D. Conn. 2001). Moreover,

"even if the existence of a conflict of interest alone, without any evidence of an effect on the administrative record, could constitute good cause, the Court retains discretion not to expand the administrative record." *Suozzo v. Bergreen,* 2003 U.S. Dist. LEXIS 18597, No. 00 Civ. 9649, 2003 WL 22387083, at *4 (S.D.N.Y. Oct. 20, 2003).

Provident asserts that with regard to Plaintiff's request to submit information outside of the administrative record even under the *de novo* standard of review and *assuming arguendo* a conflict of interest did exist (which Provident denies), the situation still does not warrant the type of information plaintiff wants to present to the court. A review of these documents Plaintiff wishes to submit as "exhibits" in support of his "conflict of interest"/ "good cause" argument are totally unrelated to Plaintiff's <u>own</u> claim for benefits. Therefore he cannot show any evidence of an affect on the administrative record.

A. <u>Regulatory *Settlement* Agreement</u>

In November 2004, the UnumProvident Corporation announced that certain of its insurance subsidiaries had entered into *settlement* agreements with state insurance regulators upon conclusion of a multistate market conduct examination led by Maine, Massachusetts and Tennessee relating to disability claims handling practices. The examination report did **not** make any findings of violations of law or market conduct regulations. However, the exam report did identify areas of concern.

The primary components of the *settlement* agreement include: enhancements to the Company's claims handling procedures; a reassessment of certain previously denied or closed claims; additional corporate and board governance to support the oversight of the reassessment process and general claims handling practices. The principal feature of the *settlement* is a

reassessment process. Under the agreement, UnumProvident offered to reassess any individual or group long-term disability claim that was denied or closed since January 1, 2000, except for specific categories of closures such as settlement, death or payment of maximum benefits. Provident notes that this offer was made to **all** claimants within this time frame, regardless of the appropriateness of claim denial or termination, medical diagnosis or policy provisions.

Defendants have emphasized the word "*settlement*" throughout the above explanation because as a settlement agreement, it is precluded from admission in this case. Plaintiff has admitted that Provident offered him participation in this settlement agreement. Plaintiff acknowledges that he did not accept Provident's settlement offer. Accordingly, information regarding the RSA should be excluded from this case.

Fed. R. Evid. 408 provides in relevant part:

> Evidence of (1) furnishing . . . or (2) accepting . . . a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. See also *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820 (2d Cir.)(1992).

The exclusion of compromise efforts "is based on the strong public policy favoring negotiated resolution of disputes. Since parties may be inhibited in making offers of compromise by the fear that these will be used against them if the compromise efforts fail, the law alleviates that fear and encourages the making of offers of compromise by making these privileged." *Duse v. International Business Machines Corp.*, 748 F. Supp. 956 (D. Conn. 2002) quoting Wright & Graham, *Federal Practice & Procedure*: Evidence: § 5302.

As this Court is aware, there are many reasons a corporation may wish to settle – cost of litigation being one of them. Accordingly, the fact that an RSA was agreed to is not related to

the issues in the case at bar.

Because the Regulatory Settlement Agreement is unrelated to the plaintiff's own claim for benefits (and therefore not relevant to the case at bar), the only reason to present it to the court is to convince the court that the defendants are bad, and therefore, must have behaved badly in this case. Rule 404 of the Federal Rules of Evidence prohibits such attempts to create "an aura of guilt" or "to imply new wrongdoing from past wrongdoing." *United States Football League v. National Football League*, 634 F. Supp. 1155, 1173 (S.D.N.Y. 1986). Accordingly, the Court should not accept such "evidence" as proof of with regard to any of the issues in this case.[2]

[2] In support of his claim that "good cause" exists for evidence outside of the administrative record, Plaintiff states in a footnote that he would like to present to the court a purported transcript of a program that was "60 Minutes" – e.g. a television program whose goal is to secure high ratings by combining supposedly newsworthy events with entertainment. Apparently Plaintiff wishes to use the transcript to indicate to the court that defendants are "bad" and thus "good cause" exists for discovery outside of the record. Provident notes that two former UnumProvident employees Diane McGinnis and Gina Hartley were interviewed on the aforesaid "60 Minutes" program. After her "60 Minutes" appearance, Hartley was deposed as a witness in the *Capulong v. Paul Revere Life and Accident Insurance Company* matter. During this deposition, for which, unlike "60 Minutes", she was under oath, Hartley admitted that while an employee of UnumProvident, in August 1999, she had called a former employer and threatened his wife, children and unborn child. Hartley excused these actions claiming that she was inebriated when she made these threats. Hartley also admitted that she received psychiatric counseling as part of her plea bargain to avoid prosecution. However, she admitted that even after her inpatient stay at the psychiatric facility, she continued to drink to the point of experiencing "black outs." Hartley also spent an inordinate amount of time at work searching for Osama bin Laden: e-mailing a number of foreign embassies and individuals asking Osama bin Laden to "Please contact Gina." (these emails were sent prior to 9/11/2001) These emails contained both Hartley's home and UnumProvident work address. Hartley admitted that for two weeks afterwards she got "foreign speaking individuals who called" her house but that she could not get them to speak English. With regard to Sylvia Diane McGinnis, McGinnis was an equally troubled equally disgruntled ex-employee. While working for UnumProvident, McGinnis had been arrested for theft from her part-time employer and convicted of the theft in June 2001. McGinniss also sent and received racially offensive e-mails at work and spent an inordinate amount of time at work contacting a voodoo priestess named Mami Wata (a/k/a Mamaissii Vivian Dansi Hounon) and a psychic reader by the name of Deborah Dancer as she required guidance on her life. She resigned after receiving a written warning and just prior to being terminated. In addition to credibility concerns, if the court allows these transcripts or unrelated settlement agreements as evidence of "good cause", it is opening a door to receiving literally hundreds of thousands of pages of unauthenticated material to both prove and disprove unsubstantiated allegations. .

B. Case Law – Decisions on Other Cases

Plaintiff states that evidence outside of the administrative record is needed so the court " .. can determine how an administrator has interpreted terms of the plan in other instances." (P. Mot. Lim., p. 4). Plaintiff submits the inapposite case of *Lain v. Unum Life Insurance* in supposed support of his argument.

The *Lain* case presented by plaintiff is distinguishable from the present case in many aspects. First, Lain had subjective findings of esophageal mobility disorder and G-E reflux. There were no subjective findings in this case. In *Lain*, the UnumProvident physician who reviewed the file in the Lain case had psychological evaluations to review and "given what Unum had" in way of medical records and documentation, did not believe that Unum would be able to refute the findings of Lain's physicians. Once again, the case at bar is different because Dr. Beecher, the Provident physician in this case, did not believe Walker's medical records supported impairment of a disabling proportion or a diagnosis of late stage Lyme disease. Lastly, the policy definition of "total disability" is different in the case at bar than in the *Lain* proceeding.

Plaintiff claims that in denying his claim, Provident has relied upon the same "all or nothing" interpretation of a very similar policy definition of disability" and accordingly he should be able to submit evidence outside of the administrative record showing plaintiff's claims handling procedures to be "bad." (P. Mot. Lim., p. 5). Unfortunately for plaintiff, none of this is true. Unlike *Lain*, Plaintiff's disability policy has a definition for <u>both</u> total <u>and</u> residual disability. Plaintiff's Policy defined "Total Disability" as that "due to Injuries or Sickness"

1. you are not able to perform the substantial and material duties of his occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability.

In this case, plaintiff's policy also has a provision for residual disability which was defined as that "due to Injuries or Sickness:

1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usually daily business duties for as much time as it would normally take you to do them;

2. you have a loss of monthly income in your occupation of at least 20% and

3. you are receiving care by a Physician which is appropriate for the condition causing disability

In its determination of what "residual disability" and "total disability" meant under Policy language identical to that contained in Plaintiff's policy, the Eighth Circuit Court of Appeals in *McOsker v. Paul Revere Life Insurance Company*, 279 F.3d 586 (8th Cir.) (2002) stated that:

> "It is evident to us that a person who can perform some but not all of his or her important duties has a "Residual Disability" within the meaning of the policy, and that therefore in order to be eligible for total disability payments a person would be required to show that he or she was unable to perform any of those important duties. We believe that it is not otherwise possible to give effect to both parts of the contract.
>
> Such a construction, moreover, conforms with the result reached by other courts that have been faced with interpreting identical or substantially identical contract language. *See, e.g., Yahiro v. Northwestern Mut. Life Ins. Co.*, 168 F. Supp. 2d 511, 517-18 (D. Md. 2001); *Dym v. Provident Life and Accident Ins. Co.*, 19 F. Supp. 2d 1147, 1149-50 (S.D. Cal. 1998); *see also Giampa v. Trustmark Ins. Co.*, 73 F. Supp. 2d 22, 27-29 (D. Mass. 1999). We think that it is significant that Mr. McOsker refers us to no cases holding the contrary."

Id. At 588 (emphasis added).

Because plaintiff's policy had a residual disability provision (and definition) unlike *Lain,* he must be unable to perform **all** his important duties to be considered totally disabled. Provident could not consider whether plaintiff met the definition of residual disability under the policy because, to save money, plaintiff's employer had stopped the payment of premiums for the residual disability provision. However, the stopping of a premium payment does not affect the definition of the policy terms concerning total disability in the context of the ability to perform all important duties

## III. CONCLUSION

The plaintiff is simply attempting to use decisions from other courts and circuits solely to bolster his own position and to attempt to create an "aura of guilt" about the defendants – decisions which are not applicable nor relevant to the policy provisions or medical facts of the case at bar. Provident and its affiliated companies, combined, represent a significant portion of the world's disability coverage and pay thousands of claims each year. Sometimes Provident is involved in litigation over these claims, and sometimes the company does not prevail. However, to isolate a few instances, out of the tens of thousands of claims it has handled in the past five or six years is completely meaningless. If the Court is going to allow "evidence" to be admitted based on how well Provident or other UnumProvident affiliates did in other cases, the Court should take note of the fact that UnumProvident wins many cases as well and it would be just as easy for defense counsel to, using LEXIS, identify a number of cases where its conduct was judicially approved[3] by Federal District Courts across the country.

---

[3] *See, for example, Harris v. Provident Life and Accident Co.*, 312 F.3d 73 (2nd Cir. 2002); *Steinberg v. Paul Revere Co.*, 2000 U.S. App. LEXIS 7298 (2d Cir.)(2000); *Weiner v. UnumProvident Corp.*, 202 F.Supp.2d 116 (S.D.N.Y.

Provident submits that whether plaintiff proved his claim or whether Provident was unreasonable in requiring the "raw data" must be based upon the facts and circumstances rationally connected to the claim – not irrelevant and immaterial submissions inapplicable to Plaintiff's specific application for benefits.

Based upon the facts of the case, Plaintiff has not shown there is "good cause" to permit inclusion of the RSA or other unauthenticated documents as exhibits in this case. Accordingly, Plaintiff's Motion should be denied in its totality.

DEFENDANTS,
PROVIDENT COMPANIES, INC.,
UNUMPROVIDENT CORPORATION and
PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY

By [signature]

Helen M. Kemp (ct 14790)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No. (860) 275-8299
E-mail: hkemp@rc.com

2000); *Rodriguez v. UNUM Life Ins. Co. of America*, 82 F.Supp. 2d 828 (N.D. Ill. 1999), *Washburn v. UNUM Life Ins. Co. of America*, 43 F. Supp. 2d 848 (S.D. Ohio 1998).

**CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, and also sent via facsimile, on this 26th day of September, 2005, to:

Paul H.D. Stoughton, Esq.
Conway & Stoughton, LLP
201 Ann Street
Hartford, CT 06103

And a courtesy copy was hand delivered to:

Hon. Alfred V. Covello
U.S. District Court
450 Main Street
Hartford, CT 06103

Helen M. Kemp

Helen M. Kemp

# Exhibit A

UNUM.

*Protecting everything you work for*

October 13, 2000

Dr. Jeff Kopp
1591 Boston Post Road
Guilford, CT 06437

Re: Mr. Edward Walker
Claim # 's 52-06030581 & 52-06000878

Dear Dr. Kopp:

Thank you for your letter dated September October 5, 2000. It was received in our office on or about October 11, 2000.

In your letter you refer to Mr. Walker's permanent impairment of his cognitive abilities. If there is any supporting documentation for the claimed cognitive impairments (such as neuropsychological testing, etc.), please submit this at your earliest convenience and we will be happy to review it. Otherwise, based on the information contained in Mr. Walker's claim file at this time, we stand by our previous determination that he does not currently qualify for total disability benefits as defined by his policy.

Should you have questions or concerns, please feel free to contact me at the number below.

Sincerely,

Erin White, ALHC
Senior Customer Care Specialist
Customer Care Center
Provident Life and Accident Insurance Company

1-800-451-8464 ext 5776

cc Mr. Edward Walker

PLACL00182

PROVIDENT

Provident Companies, Inc.
1 Fountain Square, Chattanooga, TN 37402

January 9, 2001

Paul H.D. Stoughton
Attorney at Law
241 Main Street
Hartford, CT 06106

RE: Policy Number 335-0006000878
Edward Walker

Dear Mr. Stoughton:

The undersigned examiner has completed a comprehensive review of Mr. Edward Walker's disability claim in connection with your correspondence indicating that you are in process of compiling additional information regarding Mr. Walker's condition. Based upon this examiner's review of information submitted to date, it is necessary to uphold the Company's position that the records do not provide sufficient medical data to support Mr. Walker's claimed inability to perform the substantial and material duties of his former occupation as President of East River Oil Company, Inc. The following general discussion explains the basis for that conclusion.

First, the policy covers loss (disability) resulting from "sickness or injury". It further places the burden on the policyholder to provide written proof of the loss. "Written proof" is interpreted by this examiner as persuasive evidence that the definition of total disability is reasonably satisfied. Such "proof" would include, but not be limited to, proof of the existence of sickness or disease, which prevents the performance of the substantial and material duties of the policholder's occupation. Mr. Walker was diagnosed with Lyme Disease. If we understand the substance of his claim, it is that the symptoms of this disease cause fatigue, poor concentration, memory disturbance, and occasional dizziness. In fact, a recent letter from Jeff Kopp, M.D. stated: "My medical opinion is that Edward Walker had Lyme Disease with involvement of his central nervous system and that he likely has permanent impairment of his cognitive abilities. Even though he still appears as a bright articulate individual, he cannot function, at least at this time, in his former capacity in running a 50 million dollar business".

The complete medical records were reviewed by a Board Certified Internist who observed that the objective data failed to substantiate the symptoms. While Dr. Kopp is of the opinion that the disease impairs Mr. Walker's cognitive function, at this point, there is absolutely no testing data

PLACL00203

to support this suspicion. Doctor Kopp was written on October 13, 2000 for copies of any information, which would lend support to his belief. To date, there has been no reply. So while a diagnosis of Lyme Disease may be perfectly valid, it is Provident's position that this does not translate to an assumption of total disability, and, beyond that, to an assumption of a permanent, irreversible condition. Given the circumstance, this examiner must agree with the decision previously communicated by representatives of the Company that Mr. Walker has failed to provide objective medical data in support of the claimed restrictions and limitations.

Based upon the information currently known this review exhausts the appeals process and the determination is final. We emphasize, however, that this decision is based on the information currently available. You indicated in your letter that you anticipated other documents from Mr. Walker's treating physicians. Certainly, if there is additional information, of if information is later developed, the Company remains willing to review that data. The claim file is being returned to Erin White, and we ask that you direct any additional reports to Ms. White. That address is in your file.

Finally, the reasons stated for denial of the claim and upholding that decision may not be all-inclusive. For this reason, the Company reserves the right to assert other reasons and to raise any defenses granted by the policy in the future.

Sincerely,

William E. Parker
Senior Appeals Consultant
Provident Life and Accident Insurance Company



UNUM.

*Protecting everything you work for*

March 28, 2001

Paul H.D. Stoughton
241 Main Street
Hartford, CT 06106

Re: Mr. Edward Walker
claim # 's 52-06030581 & 52-06000878

Dear Mr. Stoughton:

Thank you for your letter dated March 17, 2001.

As stated in my letter to you dated March 22, 2001, we are unable to give Mr. Walker's claim for total disability benefits our additional consideration without copies of the tests that you reference in your letter. Please provide copies of the tests (and any other recent medical information available) that Dr. Kirschner speaks of and we will forward this information to our medical department for review. If there is a reasonable fee to copy such tests, etc. please ask Dr. Kirschner to provide an invoice and we will be happy to reimburse him.

Your cooperation is greatly appreciated. We are anxious to allow further consideration of Mr. Walker's claim upon receipt of the additional information. Should you have questions or concerns on this or any other matter, please do not hesitate to contact me at the number below.

Sincerely,

Erin White, ALHC
Lead Customer Care Specialist
Customer Care Center
Provident Life and Accident Insurance Company
1-800-451-8464 ext 5776

cc. Mr. Edward Walker

PLACL 00215



UNUM.

*Protecting everything you work for*

May 23, 2001

Paul H.D. Stoughton
241 Main Street
Hartford, CT 06106

Re: Mr. Edward Walker
claim # 's 52-06030581 & 52-06000878

Dear Mr. Stoughton:

Thank you for your letter dated May 14, 2001 and the accompanying neuropsychological report provided by Dr. Kirschner.

However, in order to evaluate the additional medical information submitted, our medical consultant has specifically requested the raw data for further confirmation of the results and findings. Dr. Kirschner's concerns of confidentiality are understood. Therefore, we assure confidentiality by requesting that the provider of the neuropsychological testing send the material directly to one of our neuropsychologist. We assure you that such data will be maintained in accordance with ethical and legal standards for psychological material.

The information needed includes all *raw data, scoring sheets, data summaries, test responses, computerized interpretive summaries and any other clinical documents produces during the neuropsychological testing*.

In order for us to complete a review of Mr. Walker's disability claim, we will need to have copies of the clinical material, as soon as possible. Please provide an invoice for any copying charges incurred. Again, we assure you that such data will be maintained in accordance with ethical and legal standards for psychological material.

Please ask Dr. Kirschner to forward those documents directly to the consultant listed below:

Tom McLaren, PhD.
Clinical Neuropsychologist
Licensure : TN # P1864 & GA # 1954
Phone: 800-451-8464

PLACL 00223

Address: UnumProvident Insurance Co.
1 Fountain Square
4 North - Confidential
Chattanooga, TN 37402

Upon receipt of the additional information, we will have it promptly reviewed by our Medical Consultant. I will notify you of the results of the review as soon as it is completed. Thank you for your continued cooperation. Should you or Dr. Kirschner have any questions regarding this matter, please feel free to contact me at 1-800-451-8464, ext. 5776.

Sincerely,

Erin White ALHC
Lead Customer Care Specialist
Customer Care Center
Provident Life and Accident Insurance Company

Cc: Mr. Edward Walker

PLACL 00222