UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD WALKER | : | CIVIL ACTION NO. 3:01CV1331 (AVC) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PROVIDENT COMPANIES, INC., | : | |
| UNUMPROVIDENT CORPORATION and | : | |
| PROVIDENT LIFE AND ACCIDENT | : | |
| INSURANCE COMPANY | : | |
|     Defendants. | : | SEPTEMBER 26, 2005 |

DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION *IN LIMINE* TO SUPPLEMENT
THE ADMINISTRATIVE RECORD

Pursuant to Rule 9(g) of the Local Rules of Civil Procedure, the defendants Provident Companies, Inc., the UnumProvident Corporation and the Provident Life and Accident Insurance Company (hereinafter, collectively "Provident") hereby replies to Plaintiff's Memorandum in Opposition to Provident's motion in limine to supplement the administrative record. ("Pl. Opp.").

Provident has filed a motion seeking permission to supplement the administrative record at the trial being held in this case with live testimony of Provident employees: Erin White, who made the claim determination regarding plaintiff's application for benefits; Nancy Beecher, M.D., Provident's medical consultant who had reviewed the medical information in the file one of the plaintiff's medical providers, Dr. Carl Boland and Tom McLaren, PhD, Provident's clinical neurpyschologist. Provident also seeks to supplement the administrative with certain medical records not available to it at the time the claims decision was made due to plaintiff's doctors' refusal to submit same to Provident.

I.  **PROVIDENT ASSERTS THAT BEECHER, BOLAND, AND WHITE'S TESTIMONY WILL PROVIDE THE COURT A FULLER REVIEW OF THE ADMINISTRATIVE RECORD**

Defendants' position, under the circumstances of this case, it is not impermissible for the court to consider relevant and contemporaneous evidence as factors outside of the administrative record if the evidence can assist the court in determining how the fiduciary reached its decision.

Plaintiff has objected to Provident's request that Dr. Carl Boland, a neurologist and one of plaintiff's *own* physicians, be allowed to give testimony in this case. This is all the more surprising because plaintiff wants to offer testimony from his two other physicians, Dr. Kopp and Dr. Kirschner.[1] Provident notes that plaintiff has not explained why testimony from these two physicians is necessary but Dr. Boland (a neurologist who twice examined plaintiff) is not. Provident asserts that Dr. Boland can provide a fuller review of the findings contained in his two medical reports: one dated December 13, 1999 and the second dated November 20, 2000.

Dr. Boland's findings is at odds with Dr. Kopp's assertion that plaintiff is cognitively impaired. However, if any testimony is allowed on the issue of cognitive impairment, it should be that of Dr. Boland, a neurologist, rather than Dr. Kopp, a family doctor. Dr. Boland can provide an explanation as to why his report and findings are at odds with that of Dr. Kopp.

Provident believes that the testimonies of Dr. Beecher, along with the testimony of Mrs. White, can be considered *explanatory* evidence that will assist the court in providing a fuller review of the claim. For example, the testimony of Mrs. White will be useful in explaining why she needed the raw data and test summaries from Dr. Kirschner something that is not clear in the

---

[1] Plaintiff has not yet offered the court "good cause" as to why Dr. Kopp and Dr. Kirschner should be allowed to testify.

2

administrative record. Ms. White can also provide the court insight to the claims handling process and why she denied plaintiff's claim for benefits. Dr. Beecher can explain why she believed that Dr. Kopp's diagnosis and test for "Lyme" was inconclusive. Dr. Beecher can also explain the Center for Disease Control (CDC) protocols that were not followed by Dr. Kopp in testing the plaintiff for Lyme disease.

II. **EVIDENCE CURRENTLY OUTSIDE OF THE ADMINISTRATIVE RECORD IS NEEDED IN ORDER TO UNDERSTAND THE MEDICAL TESTIMONY**

With regard to Exhibits outside of the administrative record, Provident believes the following exhibits should be allowed:

| Defendants' Preliminary Exhibit Number | Description of Exhibit | Attached hereto as |
|---|---|---|
| 52 | MRI – Brain (10/18/00) | Exhibit A |
| 53 | Medical Report Dr. Boland (11/21/00) | Exhibit B |
| 55 | Results – WAIS-R (Kirschner Exam.) (1/26/01) | Exhibit C |
| 56 | Results of MMP1-2 (Kirschner Exam) (1/26/01) | Exhibit D |
| 57 | Results – California Verbal Learning Test (Kirschner Exam) (1/26/01) | Exhibit E |
| 58 | Results – Visual Hooper (Kirschner Exam) (1/26/01) | Exhibit F |

3

| 59 | Results of Trailmaking (1/26/01) (Kirschner Exam) | Exhibit G |
|----|---------------------------------------------------|-----------|
| 60 | Results of Wechsler Memory Scale (Kirschner Exam) (1/26/01) | Exhibit H |
| 61 | Results of Wisconsin Card Sort Test (Kirschner Exam) (1/26/01) | Exhibit I |

Provident also asks the court to permit the "live" testimony of Dr. Tom McLaren.

**A.     Exhibits – Medical Records**

The aforementioned medical records were not included in the administrative record solely due to plaintiff's medical providers' refusal to produce these records even upon Provident's request. Dr. Kopp ordered an MRI of plaintiff's brain because, as he testified at his deposition, 85% of CNS Lyme patients showed changes on the MRI. Plaintiff's MRI was normal. Additionally, when Provident asked Dr. Kopp to submit supporting documentation of plaintiff's claimed cognitive impairments, Dr. Kopp referred plaintiff back to Dr. Boland. Upon examination, Dr. Boland did not find any impairment.

Dr. Kopp did not submit the results of the MRI or the Boland report to Provident as these reports did not provide the "supporting" documentation Provident required. In this case, Provident asserts that if either report had substantiated Dr. Kopp's opinion, then Dr. Kopp would have submitted the report(s) to Provident. Dr. Kopp was therefore "picking and choosing" only those reports which he believed would substantiate plaintiff's claims of impairment. These are not reports from other doctors; these are reports from plaintiff's own treating physicians. The administrative record is incomplete without these reports. Accordingly, Provident seeks their

4

admission as exhibits. See *Sheehan v. Metro. Life Ins. Co.*, 2003 U.S. Dist. LEXIS 17634, (S.D.N.Y. 2003)(incompleteness of an administrative record "good cause" to include additional evidence - court allowed the employee to supplement the insurer's administrative record with reports from the employee's treating physicians).

With regard to the "raw testing data", the necessity of this request is better shown than explained. Provident directs the Court to **Exhibit C** (attached hereto – plaintiff's "WAIS-R" test results). On the very first page of the results, in the bottom right hand corner, there is a block indicating the "Sum of Scaled Scores" which shows the following scores:

|  | Sum of Scaled Scores | IQ |
|---|---|---|
| Verbal | 67 | 109 |
| Performance | 44 | 102 |
| FULL SCALE | 101 | 106 |

Based on the "Full Scale" score of 101, Dr. Kirschner opined to Provident that Walker's IQ was 106. However, Dr. Kirschner made several adding mistakes in computing his score. For example, 67 and 44 equal *111* not 101 – a difference of 10 points and a substantial number on an IQ test. From this single page on this single test, Provident maintains that court can see why it was necessary, and not unreasonable, for Provident to require the actual raw data and testing scores to determine if an individual suffered a cognitive impairments of disabling proportions.

Dr. Kirschner based his opinion that plaintiff was cognitively impaired on the basis of the tests that he conducted. As those tests form the basis of his opinion, Provident has a right to examine him on the nature and results of those tests. It can only do so if the court allows these tests entered into evidence. If the Court permits Dr. Kirschner to testify, then it should only do

5

so if the "raw" testing data, although not part of the administrative record, are allowed to become exhibits in the case.

Dr. Tom McLaren, a medical consultant for Provident who specializes in the area of clinical neuropsychology was disclosed as an expert witness in this case. Additionally, he would have been the medical consultant to review the data had it been given to Provident. If Dr. Kirschner is allowed to testify about the results of his examination (utilizing the raw data) then Provident should be allowed to have Dr. McLaren testify to his findings as to the tests and subsequent evaluation of Dr. Kirschner's examination of plaintiff.

For example, while the court can see a math error, the court cannot "see" the results of the other tests as clearly. Provident asserts that Dr. Kirschner made significant errors in the grading of some of these tests, for example, confusing raw scores with percentiles. The court will need Dr. McLaren's testimony to understand why Dr. Kirschner's evaluation does not substantiate plaintiff's claims. Dr. McLaren's testimony will not only provide the court a fuller review of why such raw data is necessary but how his evaluation of Dr. Krischner's testing results indicate different test results.

Plaintiff asserts that if Dr. McLaren should be allowed to testify, then so should Dr. Cohen. However, there is a difference between the two doctors. The raw data and test scores formed the basis of Dr. Kirschner's opinions which are part of the administrative record. Dr. McLaren would have reviewed the raw data and test results in the spring of 2001 as part of plaintiff's claim adjudication if plaintiff had sent the information to Provident.

The court needs to know why such information is necessary and whether Dr. Kirschner's interpretations and findings were corrected and/or based on established scientific and

6

professional knowledge of the discipline. Thus, Dr. McLaren's testimony is necessary. Dr. Cohen on the other hand, performed a vocational assessment two years <u>after</u> Provident denied plaintiff's claim. There is no connection with the information contained in the administrative record.

### III.  CONCLUSION

Accordingly, Provident believes that "good cause" exists to supplement the administrative record with the testimony of Beecher, Boland, White and McLaren and the documentary evidence noted above. Accordingly, it requests that the court allow this testimony and these exhibits to be admitted as a supplement to the administrative record.

                                    DEFENDANTS,
                                    PROVIDENT COMPANIES, INC.,
                                    UNUMPROVIDENT CORPORATION and
                                    PROVIDENT LIFE AND ACCIDENT
                                    INSURANCE COMPANY


                                    By  /s/ Helen M. Kemp
                                        Helen M. Kemp (ct 14790)
                                        Robinson & Cole LLP
                                        280 Trumbull Street
                                        Hartford, CT  06103-3597
                                        Tel. No.: (860) 275-8200
                                        Fax No.  (860) 275-8299
                                        E-mail:  hkemp@rc.com

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, and sent by facsimile on this 26th day of September, 2005, to:

    Paul H.D. Stoughton, Esq.
    Conway & Stoughton, LLP
    201 Ann Street
    Hartford, CT  06103

And a courtesy copy was hand delivered to:

    Hon. Alfred V. Covello
    U.S. District Court
    450 Main Street
    Hartford, CT  06103

                                            */s/ Helen M. Kemp*
                                            Helen M. Kemp