# TAB A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EDWARD WALKER,
   Plaintiff,

v.                                 Case No. 3:01-CV-1331(AVC)

PROVIDENT COMPANIES, INC.,
UNUMPROVIDENT CORPORATION
and PROVIDENT LIFE AND
ACCIDENT INSURANCE COMPANY
   Defendant.

## MEMORANDUM OF DECISION

    This is an action to recover benefits for total disability under a disability insurance plan. It is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The plaintiff, Edward Walker, alleges that the defendants, Provident Companies, Inc., Unumprovident Corporation and Provident Life and Accident Insurance Company (collectively "Provident"), wrongfully denied his application for disability benefits.

    On September 27, 28, 29, and 30, 2005, the parties tried the matter to the court. Having reviewed the administrative record and considered the evidence presented during trial as well as the post-trial submissions, the court finds that Provident wrongfully denied Walker the disability benefits for which he is qualified.

## FACTS

    On February 9, 1989, Walker's employer, East River Oil Company, purchased a Disability Income Policy ("the Policy") for its employees from Provident. The purpose of the Policy was to

secure income for a holder in the event that he or she should become totally disabled due to injuries or sickness and therefore be unable to continue in his or her occupation. The Policy defined "total disability" to mean that due to injury or sickness:

1. [The policy holder is] not able to perform the substantial and material duties of his occupation; and
2. [The policy holder is] receiving care by a Physician which is appropriate for the condition causing the disability.

"Occupation" is defined in the Policy to mean the occupation in which [the policy holder is] regularly engaged at the time [he] becomes disabled.

As set forth in the Policy, the procedure for filing a disability claim required the claimant to give written notice of a claim as soon as reasonably possible. Provident was then to send the claimant a form for the filing of a "proof of loss." The Policy provided that the proof of loss must be written but did not otherwise specify how a loss must be proved. For example, there was no requirement that the proof of loss be supported by objective medical evidence. The Policy reserved the right to Provident to require an independent medical examination.

On or about June 5, 2000, Walker filed a notice of claim with Provident. In response, Provident sent Walker the necessary forms for filing a proof of loss. On June 27, 2000, Walker

2

submitted the claim for disability which included the proof of loss.

At that time, Walker was president of East River Energy, Inc., a $50 million company. His duties as president included administration of all company operations except sales, establishing company goals and objectives, purchasing trucks, oil and computers, as well as the company's banking, legal activity and hiring.

Attached to the claim was the Attending Physician's Statement filled out by Dr. Jeffrey Kopp, Walker's treating physician. Kopp, who had treated hundred of Lyme disease patients, diagnosed Walker as suffering from Central Nervous System (CNS) Lyme disease and listed under "Limitations" that Walker could not do the following: "Complex mental tasks, Prolonged concentration, Memory tasks."

On July 10, 2000, Provident acknowledged receipt of Walker's claim and assigned it to one Erin White, a senior customer care specialist with Provident. White had at that time approximately two and a half years of experience and had dealt with about two hundred cases, 25% of which involved claims of cognitive impairment. This was, however, her first Lyme disease case.

On August 10, 2000, White sent the claims file and the medical records provided by Kopp to Dr. Nancy Beecher, one of Provident's in-house medical consultants, for review. Beecher

3

concluded that there were "no clear manifestations of Lyme disease" and stated that "I see no medical condition of sufficient severity to keep him from working at an administrative job." Beecher had never treated a Lyme disease patient during her medical career.

On September 6, 2000, by letter of that date, White informed Walker that she was denying his claim because "there is no clear manifestation of Lyme's disease and that there appears to be no medical condition of sufficient severity to prevent you from working at an administrative job.... Therefore, you do not currently meet the definition of total disability...." White further informed Walker of his right to appeal the decision and how to do so.

On October 5, 2000, Kopp, as part of Walker's appeal, sent a letter to Provident in which he stated that in his medical opinion, "Edward Walker had Lyme disease with involvement of his central nervous system and that he likely has permanent impairment of his cognitive abilities. Even though he still appears as a bright and articulate individual, he cannot function, at least at this time, in his former capacity in running a 50 million dollar business."

On October 13, 2000, White responded that "we stand by our previous determination that [Walker] does not currently qualify for total disability benefits as defined by his policy." She

4

further invited Kopp to submit any supporting data such as "neuropsychological testing." Kopp thereafter referred Walker to one Dr. Mark Kirschner, a clinical psychologist.

On January 2 and 26, 2001, Kirschner tested Walker for cognitive impairment.

On March 13, 2001, Kirschner wrote Provident and informed it of his conclusions: "The results [of the tests] support the conclusion that Mr. Walker is unable to concentrate and/or attend to tasks to the degree required in order to perform effectively the duties of his position, as I understand them to be. Further, Mr. Walker's condition is a result of 'injury or sickness', in as much as it is a result of Lyme disease or of clinical depression secondary to Lyme disease. Therefore, in my opinion, Mr. Walker presently is totally disabled as that term is defined [in the Policy]."

On January 9, 2001, one William E. Parker, a senior appeals consultant for Provident, wrote Walker's counsel, Attorney Paul Stoughton, informing him that he had denied Walker's appeal. Parker stated that "at this point there is absolutely no testing data to support [Dr. Kopp's] suspicion" that Walker's cognitive function was impaired by Lyme disease.

On March 28, 2001, White sent a letter to Stoughton stating that she had received the March 13, 2001, letter from Kirschner but that "we are unable to give Mr. Walker's claim for total

5

disability benefits our additional consideration without copies of the tests [that Kirschner used]."

On May 14, 2001, Stoughton sent a second report by Kirschner to Provident. In the report, Kirschner repeated his previous conclusion and provided more detail about the tests that he had performed.

On May 23, 2001, White sent a letter to Stoughton informing him that "[i]n order to complete a review of Mr. Walker's disability claim" Provident required all the raw data from the tests that had been performed.

At no time did Provident exercise its right to have an independent medical examination performed. However, after litigation had been initiated Provident was provided with the tests that Kirschner performed on Walker as well as the raw data that he generated. Provident then had one Dr. Tom McClaren, a neuropsychologist working for Provident, review the tests and the data. At trial, McClaren testified that the tests used by Kirschner were old and not as diagnostically accurate as newer tests. He further testified that he found some errors in addition and scoring conversion. He did not, however, testify that Kirschner's conclusion about Walker's cognitive function was incorrect.

Also at trial, one Dr. James S. Cohen, a vocational rehabilitation specialist, testified that Walker could only

6

intermittently function at an upper level job.

**STANDARD**

The parties agree that the court reviews this case de novo (Pretrial Memorandum, p. 1). Upon de novo review, "a district court may render a determination on a claim without deferring to an administrator's evaluation of the evidence." Locher v. UNUM Life Ins. Co. of Am., 389 F.3d 288, 296 (2d Cir. 2004). For example, a district court is "free to evaluate [a treating physician's] opinion in the context of any factors it consider[s] relevant, such as the length and nature of their relationship, the level of the doctor's expertise, and the compatibility of the opinion with the other evidence." Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127, 135 (2d Cir. 2001). Furthermore, a district court has discretion to admit evidence outside the administrative record for good cause. Locher, 389 F.3d at 293-94.

**DISCUSSION**

Provident argues that under the Policy, Walker had the burden of showing that he was totally disabled. In its opinion, Walker failed to meet that burden. The court disagrees. Two medical professionals, Dr. Kopp and Dr. Kirschner, specifically concluded that in their opinion, Walker was, as a result of contracting Lyme disease, totally disabled as defined by the Policy. Only under a patently unreasonable standard of proof

7

would this evidence not be held to meet the requisite burden. In addition, Dr. James S. Cohen, a Ph.D. qualified vocational rehabilitation specialist with over 20 years of experience in the field, testified that Walker could only intermittently function at an upper level job. Finally, the court had the opportunity to observe Walker and hear him testify about his own condition.

In attempting to rebut the conclusions by Kopp and Kirschner, Provident relies on the conclusion by Nancy Beecher, its in-house medical consultant. Beecher had never treated a Lyme disease patient while practicing medicine. Moreover, at the time of Beecher's review, neither Kopp's letter of October 5, 2000, nor Kirschner's reports existed. Provident did not have Beecher again review Walker's file upon receiving the new information. At no time prior to the onset of litigation did Provident refer the matter for assessment to its in-house neuropsychologist.

Nor did Provident act on its right to require an independent medical examination of Walker. Instead it was content to let White, who had no medical expertise, review and reject the conclusions of the two medical professionals who actually examined Walker. The court therefore finds that Provident did not rebut the medical conclusions provided to it by Walker that he was totally disabled as defined within the Policy.

8

**CONCLUSION**

For the foregoing reasons, the court concludes that Walker met his burden of showing that he was totally disabled and that Provident wrongfully denied his application for disability benefits.

Therefore, Provident shall pay benefits to Walker in the amount due under the Policy, plus pre-judgment interest at the statutory rate accrued from September 6, 2000, the date Provident denied Walker's claim.

It is so ordered, this 2nd day of November, 2005 in Hartford, Connecticut.

          _____/s/_____
          Alfred V. Covello, U.S.D.J.

## **TAB B**

10/31/2006 9:19:51 AM Page 4

Walker, Edward (06-6000878)

| | Date | Benefit Due | Benefit Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|---|
| Benefit Due | 09/06/2004 | 8,340.00 | | 2,299.43 | 2,299.43- | 461,871.08 |
| Benefit Due | 10/06/2004 | 8,340.00 | | 2,277.72 | 2,277.72- | 472,488.80 |
| Benefit Due | 11/06/2004 | 8,340.00 | | 2,407.75 | 2,407.75- | 483,236.55 |
| Benefit Due | 12/06/2004 | 8,340.00 | | 2,383.08 | 2,383.08- | 493,959.63 |
| 2004 Totals | | 100,080.00 | 0.00 | 25,584.55 | 25,584.55- | |
| Benefit Due | 01/06/2005 | 8,340.00 | | 2,517.16 | 2,517.16- | 504,816.79 |
| Benefit Due | 02/06/2005 | 8,340.00 | | 2,572.49 | 2,572.49- | 515,729.28 |
| Benefit Due | 03/06/2005 | 8,340.00 | | 2,373.77 | 2,373.77- | 526,443.05 |
| Benefit Due | 04/06/2005 | 8,340.00 | | 2,682.70 | 2,682.70- | 537,465.75 |
| Benefit Due | 05/06/2005 | 8,340.00 | | 2,650.52 | 2,650.52- | 548,456.27 |
| Benefit Due | 06/06/2005 | 8,340.00 | | 2,794.87 | 2,794.87- | 559,591.14 |
| Benefit Due | 07/06/2005 | 8,340.00 | | 2,759.63 | 2,759.63- | 570,690.77 |
| Benefit Due | 08/06/2005 | 8,340.00 | | 2,908.18 | 2,908.18- | 581,938.95 |
| Benefit Due | 09/06/2005 | 8,340.00 | | 2,965.50 | 2,965.50- | 593,244.45 |
| Benefit Due | 10/06/2005 | 8,340.00 | | 2,925.59 | 2,925.59- | 604,510.04 |
| Benefit Due | 11/06/2005 | 8,340.00 | | 3,080.52 | 3,080.52- | 615,930.56 |
| Benefit Due | 12/06/2005 | 8,340.00 | | 3,037.47 | 3,037.47- | 627,308.03 |
| 2005 Totals | | 100,080.00 | 0.00 | 33,268.40 | 33,268.40- | |
| Benefit Due | 01/06/2006 | 8,340.00 | | 3,196.69 | 3,196.69- | 638,844.72 |
| Benefit Due | 02/06/2006 | 8,340.00 | | 3,255.48 | 3,255.48- | 650,440.20 |
| Benefit Due | 03/06/2006 | 8,340.00 | | 2,993.81 | 2,993.81- | 661,774.01 |
| Benefit Due | 04/06/2006 | 8,340.00 | | 3,372.33 | 3,372.33- | 673,486.34 |
| Benefit Due | 05/06/2006 | 8,340.00 | | 3,321.30 | 3,321.30- | 685,147.64 |
| Benefit Due | 06/06/2006 | 8,340.00 | | 3,491.44 | 3,491.44- | 696,979.08 |
| Benefit Due | 07/06/2006 | 8,340.00 | | 3,437.16 | 3,437.16- | 708,756.24 |
| Benefit Due | 08/06/2006 | 8,340.00 | | 3,611.74 | 3,611.74- | 720,707.98 |
| Benefit Due | 09/06/2006 | 8,340.00 | | 3,672.65 | 3,672.65- | 732,720.63 |
| Benefit Due | 10/06/2006 | 8,340.00 | | 3,613.42 | 3,613.42- | 744,674.05 |
| Benefit Due | 11/06/2006 | 8,340.00 | | 3,794.78 | 3,794.78- | 756,808.83 |
| 1 | 11/14/2006 | | 757,804.06 | 995.23 | 756,808.83 | 0.00 |
| 2006 Totals | | 91,740.00 | 757,804.06 | 38,756.03 | 719,048.03 | |
| Grand Totals | | 625,500.00 | 757,804.06 | 132,304.06 | 625,500.00 | |